Stanley F. Brook and Norman Rubin d/b/a Abbott Construction Company, and B. R. Abbott Construction Co., an Illinois Corporation, Plaintiffs-Appellants, v. Paul Oberlander d/b/a Loyola Electrical Construction Co., Defendant-Appellee.

Gen. No. 49,269.

First District, Third Division.

May 28, 1964.

Seymour Tabin, of Chicago, for appellant.

Bateman and Sodaro, of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment entered in the Municipal Court of Chicago in favor of the defendant.

The plaintiffs, Stanley F. Brook and Norman Rubin, d/b/a Abbott Construction Company, will hereafter be referred to as the plaintiff partnership, and plaintiff, B. R. Abbott Construction Co., an Illinois corporation, will hereafter be referred to as the plaintiff corporation.

The question involved in this case is whether a contract was created between the defendant and either one or both of the plaintiffs.

The case was tried before the trial judge without a jury and the parties stipulated to the facts, which are as follows:

On March 16, 1962, the defendant, Paul Oberlander, d/b/a Loyola Electrical Construction Co., sent a bid to the plaintiff partnership under which the defend-

ant proposed to furnish the necessary labor and materials to do the electrical work according to plans and specifications dated November 1, 1961, in connection with additions and alterations on the maintenance facilities of the American Airlines at the Chicago O'Hare International Airport for the sum of $9,310.

This bid was admitted into evidence by stipulation as plaintiffs' Exhibit A.

After the bid was sent to the plaintiff partnership by the defendant, the plaintiff corporation obtained the general contract from American Airlines. Thereafter, on March 30, 1962, the defendant went to O'Hare Air Field to meet with Mr. Brook and a representative of the American Airlines. At that time plaintiffs' Exhibits B, C & D (a cover letter, a proposed contract, and a document entitled "provisions of subcontract") were offered to the defendant for signature and he was asked to commence work. In a deposition of the defendant he testified "Probably I told this to Brook that I probably would start the job the next week. That I told him." It was further stipulated that the original bid of the plaintiff corporation to the American Air Lines for the general contract was based on the signed proposal of the defendant. Plaintiffs' Exhibit B, which was handed to the defendant at O'Hare International Airport by Mr. Brook, reads as follows:

> "B. R. ABBOTT CONSTRUCTION CO.
> 5789 North Lincoln Avenue
> Chicago 45, Illinois
>
> Longbeach 1–2580
>
> Re:
>
> Gentlemen:
>
> We are enclosing a proposed contract and ask that you please read it over carefully. An inte-

gral part of the proposed contract is our Form #500 entitled 'Submittal Progress Control Form' and Form #314 entitled 'Breakdown of Subcontractor's Job Operations.' THESE FORMS MUST BE FILLED OUT COMPLETELY AND IN DETAIL AND WILL REPRESENT A COMMITMENT BY YOUR COMPANY AS TO THE TIME SCHEDULES TO WHICH YOU WILL CONFORM. *If you agree with the terms of this proposed contract, please sign and return it to us for our signature.*

*The enclosed contract is not to be considered as an effective agreement until executed by you and by us. The data submitted by you in the aforementioned forms, if acceptable to us, shall be incorporated in a job co-ordinated progress schedule together with the other trades on this job.* When this form has been prepared, a conference will be called of all the subcontractors involved and this schedule will then be adjusted and corrected to the mutual agreement of all parties. This document shall then also become a part of the contract and shall be duly executed by all parties concerned.

All forms and contracts should be returned not later than ——— so that the co-ordinated progress schedule can be prepared and a meeting of subcontractors arranged for at the earliest possible time.

> Yours very truly,
> B. R. ABBOTT CONSTRUCTION CO.
> By ———."

(Emphasis supplied.)

Both plaintiffs' Exhibits C and D were to be executed by B. R. Abbott Construction Company, the plaintiff

315

corporation, and the defendant. The defendant refused to execute them and refused to proceed with the work. The plaintiffs' claim was for the sum of $4,390, because the plaintiff corporation was required to enter into a subcontract with another electrical contractor and was required to pay that amount in excess of the $9,310 set forth in defendant's bid of March 16, 1962.

Plaintiffs contend that the defendant's refusal to perform the work was a breach of contract.

Plaintiffs further contend that when Mr. Brook and the defendant met at O'Hare International Airport, and the defendant was asked to commence work, that constituted an unequivocal acceptance of the defendant's bid and a contract was thereby created. However, at the same time that the defendant was asked to commence work he was given plaintiffs' Exhibits B, C & D, and he was also asked to execute Exhibits C & D. Exhibit B, stated that "if you agree with the terms of this proposed contract, please sign and return it to us for our signature." This letter further recited "The enclosed contract is not to be considered as an effective agreement until executed by you and by us." From the wording of this letter, which bore the name B. R. Abbott Construction Co., the plaintiff corporation, both at the heading and at the end of the letter, it would appear that the plaintiff corporation, if it had the right to accept the proposal of the defendant submitted to the plaintiff partnership on March 16, 1962, specifically refused to accept said proposal and insisted upon the execution of the written contract and "general provision of subcontract."

Plaintiffs have cited the case of Calo, Inc. v. AMF Pinspotters, Inc., 31 Ill App2d 2, 176 NE2d 1, wherein it is stated "If no specific mode of acceptance is specifically fixed in the offer, the acceptance need not be in any particular form nor evidenced by express words."

Plaintiffs have called the court's attention to the case of Frederick Raff Co. v. Murphy, 110 Conn 234, 147 A 709 (1929), wherein a defendant plumbing subcontractor contended that no contract came into existence. In that case the court held that when the plaintiff general contractor telephoned information to defendant that plaintiff's bid had been accepted, that constituted an acceptance of defendant's offer and was sufficient communication to constitute a binding contract. However, in that case the subcontractor agreed to bid only if he was the only one solicited, and if he got the assurance that he would get the job if the general contractor was the successful bidder.

By Exhibit B the plaintiff corporation clearly demonstrated that it did not propose to be bound by any contract other than the proposed written contract.

Moreover, in Exhibit A, which is the bid of the defendant, the electrical work was to be done "in accordance with plans and specifications prepared by C. F. Murphy Associates, dated November 1, 1961, Addenda #1 with Revisions A, B. and C." The letter presented to defendant on March 30, 1962 by the plaintiff corporation would require the defendant, if he signed the contract appended thereto, to do electrical work described as "electrical work for American Airlines—Maintenance Facilities, Additions and Alterations,—Phase 2—in accordance with plans and specifications as prepared by C. F. Murphy Associates, Architects—consisting by way of description but not limitation—including Addendum #1, Division 13, entitled electrical work."

■ ■ It will be noted that there is a variation between the description of the work as it appeared in the bid of the defendant and as set forth in the alleged acceptance by the plaintiff corporation. In order that an acceptance may create a binding and enforceable contract, it must comply strictly with the terms of the offer. If any of the terms are changed

317

there can be no acceptance; the alleged acceptance amounts to a rejection of the original offer and becomes a counterproposal which must be accepted by the original offeror before a valid contract is created. Since the alleged acceptance in the instant case changed the terms of the original offer it was in reality a counterproposal, and since the defendant refused to execute the documents presented to it, no contract was ever created between the parties.

 The plaintiffs also contend that under the doctrine of promissory estoppel the defendant was bound by his proposal. In section 90 of the Restatement of Contracts it is said:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and which does induce such action or forbearance, is binding if injustice can be avoided only by enforcement of the promise."

The doctrine of promissory estoppel cannot be invoked in this case because of the plaintiff corporation's own conduct. The act of the plaintiff corporation in stating that the enclosed contract is not to be considered an effective agreement until executed by the defendant and the plaintiff corporation negates the contention that the defendant's proposal or bid had been accepted, and as will be shown, the plaintiff corporation, not being the offeree, had no right to rely on defendant's proposal.

Plaintiffs also cite Northwestern Engineering Co. v. Ellerman, 23 NW2d 273 (SD 1946), which held that the refusal by either party to execute a proposed supplemental contract containing only such terms as were reasonably within the contemplation of the parties would constitute a breach of the original agreement.

Since the plaintiff corporation, as has heretofore been stated, by its own conduct failed to accept the bid of the defendant, the Ellerman case can offer little comfort.

The defendant raises the point that an offeror has the right to choose the person with whom he deals and the offer cannot be accepted by one to whom it was not addressed. The plaintiffs contend that this issue had been raised by motion in the trial court, which motion had been overruled, and that the defendant did not raise this issue in his answer. The record does not disclose a motion by the defendant. The amended statement of claim alleged that Stanley F. Brook and Norman Rubin, d/b/a Abbott Construction Company, on their own behalf and on behalf of plaintiff, B. R. Abbott Construction Co., received a bid from the defendant. The defense to the amended statement of claim set forth that the defendant had no knowledge that the plaintiff partnership was acting on behalf of anyone else. This statement appearing in the defense to the amended statement of claim was never disputed by the plaintiffs, and it must be considered as having been admitted by the plaintiffs. Since the offer was made to the plaintiff partnership, the plaintiff corporation had no right to accept the offer and thereby bind the defendant. The defendant made no offer to the plaintiff corporation to induce it to bid on the general contract.

In Schneider v. Pioneer Trust & Savings Bank, 26 Ill App2d 463, 465, 168 NE2d 808, 809, the court said:

> "To sustain appellant's theory, we would be required to expand the term 'offeree' to include anyone who had the power to bring about the result contemplated in the offer. This cannot be done. The offeror has the right to choose the person with whom he deals. Barker v. Keown, 67 Ill App 433; Ott v. Home Savings & Loan Associa-

tion, 265 F2d 643; 1 Corbin, Contracts, sec 56 (1950). To constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer. Snow v. Schulman, 352 Ill 63, 185 NE 262; El Reno Wholesale Grocery Co. v. Stocking, 293 Ill 494, 127 NE 642."

In this case the plaintiff corporation sought to accept the bid or offer made to the plaintiff partnership. A partnership and a corporation are separate and distinct legal entities, and this is equally true here even though the two partners of the plaintiff partnership were also the sole stockholders of the plaintiff corporation.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.