*In re* MARRIAGE OF JOYCE J. HABERMEHL, Petitioner-Appellant, and DONALD J. HABERMEHL, Respondent-Appellee.

Fifth District   No. 5—84—0425

---

Opinion filed June 26, 1985.

Robert J. Hildebrand, of Belleville, for appellant.

William L. Wimmer III, of McRoberts, Sheppard, Wimmer & Pallmann, of East St. Louis, for appellee.

PRESIDING JUSTICE JONES delivered the opinion of the court:

The petitioner, Joyce Habermehl, appeals from a summary judgment rendered in favor of the respondent, Donald Habermehl, on petitioner's motion to modify the amended judgment for maintenance and division of marital and nonmarital property of February 24, 1982.

The Habermehl marriage was dissolved on March 3, 1981, in a

Missouri circuit court by default decree. The decree made no provision for maintenance or division of marital property due to lack of personal jurisdiction over the petitioner. On April 21, 1981, petitioner filed a petition for maintenance and division of marital and nonmarital property in St. Clair County, Illinois, to have the court decide the issues of property and support.

On October 5, 1981, a judgment for maintenance and for division of marital and nonmarital property was entered. At the time of this judgment petitioner was age 46 and respondent was age 47. Petitioner, being dissatisfied, then made timely appeal from the denial of her post-trial motion to this court. That appeal was voluntarily dismissed on February 22, 1982, because the parties had entered into a marital settlement agreement that was then made a part of an amended judgment entered on February 24, 1982.

At the time of entry of the judgment and the amended judgment the Supreme Court case of *McCarty v. McCarty* (1981), 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728, was effective law. It held that State courts could not make division of military pensions in dissolution of marriage proceedings. But, on February 1, 1983, Congress enacted the Uniformed Services Former Spouses Protection Act (USFSPA) (10 U.S.C. sec. 1408(c)(1) (1982)) and made it effective retroactively as of June 25, 1981. This act abrogated the effect of the Supreme Court's decision in the *McCarty* case.

The judgment for maintenance and division of marital and nonmarital property of October 5, 1981, contained the following paragraph 10:

"The respondent currently receives $620.00 per month in military retirement pay as a result of his prior service in the United States Air Force. The court has not considered this income to be marital property but has considered it in making a determination regarding maintenance."

The "Marital Settlement Agreement" entered into by the parties provided, in part:

"c. Donald F. Habermehl shall have as his sole and exclusive property free and clear from any claims by Joyce J. Habermehl, the following items of marital property:
* * *
(2) All interest in his retirement pension through the Civil Service and his retirement pension through the Department of the Air Force."

The settlement agreement was otherwise a comprehensive agreement for the disposition of all the nonmarital and marital property of the

parties. The amended judgment of February 24, 1982, incorporated the settlement agreement, including the foregoing pension provisions.

On February 17, 1984, petitioner filed a motion to modify the judgment of October 25, 1981, and the amended judgment of February 24, 1982, alleging that because of the *McCarty* decision, in effect at the time of the agreement of the parties for settlement of the property division issues and the judgment reflecting such settlement, she and the court had not considered the military pension to be marital property. She alleged further that the act of Congress that retroactively abrogated the effect of the *McCarty* decision had the effect of overruling the judgment of the court and making possible a reallocation of the marital property of the parties, particularly including the respondent's military pension. Petitioner's motion was beset with two jurisdictional problems. Her motion was filed more than 30 days after the entry of the amended judgment, and the amended judgment incorporated and adopted an agreement of the parties for nonmodification of terms pursuant to section 502(f) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 502(f)).

Following a hearing, summary judgment was granted respondent by the trial court upon the grounds that its jurisdiction to consider petitioner's motion to modify was foreclosed by the above-mentioned impediments.

In this setting, petitioner contends on appeal that the trial court erred in granting summary judgment to respondent on her motion to modify. She asserts that because the *McCarty* decision effectively precluded the court from considering respondent's military pension as marital property, the circumstances were such that section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1981, ch. 110, par. 2—1401) should be utilized to permit opening of the judgment and amended judgment to award her a portion of respondent's military pension, even though her motion was filed more than 30 days after the amended judgment was entered and the parties had agreed to a nonmodification provision pursuant to section 502(f) of the Marriage and Dissolution of Marriage Act. We affirm.

Petitioner's remedy admittedly is conditioned upon the availability of section 2—1401 of the Civil Practice Law. In *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 283-84, 433 N.E.2d 253, 257-58, the supreme court described the circumstances in which 2—1401 relief would be available to a litigant:

"In general, to be entitled to relief from judgment, the petitioner must prove (1) that if the ground for relief had been known at trial it would have prevented the entry of judgment

against him, and (2) that failure to discover and present the ground for relief was not the result of his own lack of diligence. [Citations.] International Harvester has argued vehemently in this court that newly discovered evidence can never be a ground for setting aside a judgment under section 72. [Ill. Rev. Stat. 1979, ch. 110, par. 72, the predecessor of 2—1401.] It is true that language to this effect can be found in many of our cases. [Citations.] However, closer examination reveals that in these cases and indeed in all the cases we have found in which newly discovered evidence was held not to be a sufficient ground for relief under section 72, it was for one of two reasons: either the losing litigant, through the exercise of ordinary diligence, could have discovered and produced the evidence at trial; or the evidence was not of so material and controlling a nature that it probably would have changed the outcome of the trial."

Also see *Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 473 N.E.2d 955; *Brunswick v. Mandel* (1974), 59 Ill. 2d 502, 322 N.E.2d 25.

Petitioner does not allege any of the usual grounds used for invoking section 2—1401, such as that the amended judgment was based on mistake, fraud or newly discovered evidence or that the amended judgment based on the marital settlement agreement was manifestly unfair, unjust, unconscionable, or contrary to any rule of law, public policy or morals. Petitioner relies solely on the fact that there was a change in the law regarding the disposition of military pensions which she believes justifies the reopening of this case.

Petitioner's initial hurdle, which we deem she has been unable to surmount, is that the division of property agreement of the parties, incorporated into the amended judgment of February 24, 1982, contains an express agreement for nonmodification as authorized by section 502(f) of the Marriage and Dissolution of Marriage Act.

Section 502(f) recognizes the right of the parties to preclude or limit modification of all settlement terms except those concerning support, custody or visitation of children. It is indicated in the Historical and Practice Notes on section 502 (Ill. Ann. Stat., ch. 40, par. 502, at 399 (Smith-Hurd 1981)) that the section's purpose was to encourage careful planning and to eliminate uncertainty based on fear of future motions to increase or decrease the parties' obligations. The only limit placed on the parties' freedom to bargain their own property and maintenance agreement, the Notes indicate, is that the end product incorporated into the settlement decree may not be so unjust as to be

unconscionable.

The amended judgment before us does not violate the law concerning military retirement pay as now expressed by the USFSPA. The changes made in the original judgment for division of property in the marital settlement agreement and incorporated by the court into the amended judgment demonstrate that the parties factored the military retirement pay into the agreement as the USFSPA contemplated. The legislative history of the act relates that "[n]othing in this Provision requires any division [of military retirement pay]; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution." S. Rep. No. 502, 97th Cong., 2d Sess. 16 (1982), *reprinted in* 1982 U.S. Code Cong. & Admin. News 1555, 1611.

The USFSPA does not by any means mandate that military retirement pensions be shared by its recipient and a former spouse. As indicated above in the reference to the legislative history, it only authorizes division; it leaves to State courts the decision regarding whether any allocation is to be made. Although no division of respondent's military retirement pension was made in the agreement and the amended judgment because such was prevented at the time by the *McCarty* case, it is nonetheless evident that the parties and the trial court gave full recognition to the payments generated by that pension in making the division of the marital property in this case. Paragraph 10 of the judgment of October 5, 1981, set forth in full above, recites that the court deemed the military retirement pension to be respondent's nonmarital property but nevertheless considered it in making a determination regarding maintenance. Following petitioner's appeal of the October 5, 1981, judgment the parties negotiated new terms of property disposition whereby the respondent's military retirement pension was allocated to him as his marital property. That agreement was then incorporated into the amended judgment. It is to be noted that the negotiations, agreement and amended judgment resulted in substantial gains to petitioner.

The original judgment, the negotiated settlement and the amended judgment show a carefully derived plan that we consider to be fair to both parties. In the original judgment of October 5, 1981, the petitioner was awarded nonmarital property including a mattress, a sofa and an oriental rug. Petitioner's marital property award included a 1978 Oldsmobile Cutlass, all cash in her name in banks and financial institutions, all the household furnishings, effects and appliances located in the marital home and all the items of personal property then in her possession. Respondent was not awarded any non-

marital property in the October 5, 1981, judgment and received the following items of marital property: an unimproved parcel of real estate located in Florida, all interest in his Civil Service pension, a 1977 Oldsmobile Delta 88 automobile, all cash at banks and financial institutions in his name, all other items of personal property then in his possession.

The October 5, 1981, judgment provided for sale of the marital home within 120 days of the judgment with the proceeds to be distributed 75% to the petitioner and 25% to the respondent. The amended judgment, based on the marital settlement agreement, awarded the entire equity in the home to the petitioner. The value of the home was estimated at something between $55,000 and $62,000. Such sums invested at an annual rate of 8% would yield $4,400 to $4,960 annually, or $366 to $431 per month. The agreement also provided that respondent was to pay $500 of petitioner's attorney fees. The changes effected in the amended judgment are important because they were based on the parties' negotiations and reflected in the marital settlement agreement.

■■ Our examination of the record and consideration of the circumstances leave us convinced that the petitioner has failed to allege or prove any matters that would justify a court in setting aside an agreement for nonmodification entered into pursuant to section 502. No fraud in the inducement or the execution is present, there was no overreaching by respondent or his attorney and the relevant economic evidence all indicates that the agreement and the judgment as amended were not unconscionable.

As authority for petitioner's proposition that Congress intended the USFSPA to allow the courts to reopen all cases decided during the period when *McCarty* was good law, petitioner cites *Smith v. Smith* (Del. Fam. Ct. 1983), 458 A.2d 711. In *Smith* the divorce decree did not contain a nonmodification clause, which is an essential element in the case at bar. Petitioner also cites a New Jersey case (*Castiglioni v. Castiglioni* (1984), 192 N.J. Super. 594, 471 A.2d 809), which does involve a nonmodification clause in a settlement agreement. The New Jersey court allowed the reopening of a judgment based on a New Jersey statute "which permits the court to relieve a party from a final judgment for 'any other reason justifying relief.' " (192 N.J. Super. 594, 597, 471 A.2d 809, 811.) The law upon which the *Castiglioni* decision is based provides a much wider range of discretion than our section 2—1401, and, therefore, we deem the decision not applicable to the case at hand.

Much of what we have said with regard to petitioner's inability to

overcome the section 502(f) agreement and judgment is applicable to her assertions regarding the availability of relief under section 2— 1401 of the Civil Practice Law. As we have noted above, petitioner has not relied on any of the ordinary grounds for relief under that provision, such as fraud, newly discovered evidence, a judgment contrary to public policy or morals, or the like. For section 2—1401 relief, she relies solely on the fact that, at the time of the original judgment, the subsequent property settlement agreement and the amended judgment, the *McCarty* decision prohibited any consideration of respondent's marital retirement pension as military property. She contends that when that impediment was removed retroactively by the USF-SPA, the entire property disposition process could and should be reopened to permit consideration of the pension as marital property.

■ As discussed with regard to section 502, the amended judgment did regard the pension as marital property and awarded it to respondent as his sole property. Although the designation of the pension as marital property was at the time contrary to the dictates of the *McCarty* case, it nevertheless appears that reciprocal economic compensation to petitioner was an accompaniment to that designation and that such compensation was a direct result of negotiations between the parties. It is unquestioned that the pension was known to petitioner at the time of the negotiations and the amended judgment, so it cannot constitute newly discovered evidence. (See *King v. King* (1985), 130 Ill. App. 3d 642, 474 N.E.2d 834.) What was not known at that time and could not have been discovered by the exercise of diligence was that Congress would abrogate retroactively the rule of the *McCarty* decision. Notwithstanding the propriety of the "marital property" classification at the time, such classification was nevertheless made and the pension was factored into the parties' property disposition. Thus, the subsequent adoption of the USFSPA did nothing more than furnish legitimacy for that which had already transpired.

■ Petitioner argues that summary judgment was improperly granted because "[t]he trial court should construe the pleadings and other documents in favor of the nonmoving party and strictly against the movant," citing *Dale v. Groebe & Co.* (1981), 103 Ill. App. 3d 649, 652, 431 N.E.2d 1107, 1111. However, the *Dale* court further stated: "Although there may exist an issue of fact, the trial court, when viewing the evidence in the light most favorable to the nonmoving party, may grant summary judgment where it concludes that, as a matter of law, no liability exists." (103 Ill. App. 3d 649, 652, 431 N.E.2d 1107, 1111.) Additionally, the Illinois Civil Practice Law on summary judgment states, in part: "The judgment sought shall be

rendered without delay if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1981, ch. 110, par. 2—1005.

The trial court properly granted summary judgment where there was a failure to allege or prove sufficient matters to justify the invocation of a section 2—1401 remedy. To the contrary, examination of the record reveals ample proof to support the summary judgment rendered by the trial court.

Affirmed.

KASSERMAN and KARNS, JJ., concur.