MARILYN J. CRETE *vs.* VALMORE D. CRETE, JR.

No. 89-P-600.

Plymouth. September 10, 1990. - November 21, 1990.

Present: PERRETTA, DREBEN, & FINE, JJ.

*Divorce and Separation*, Division of property, Pension benefits.

In the circumstances of a divorce action, the wife made no showing as required by criteria set forth in 10 U.S.C. § 1408 (c) (4) and (d) (2) (1988), that the divorce judgment, which made no equitable division of the husband's military pension, was based on or influenced by principles stated in *McCarty* v. *McCarty*, 453 U.S. 210 (1981), or that other equitable considerations required modification of the divorce judgment, and consequently the judge was warranted in dismissing the wife's complaint seeking division of the pension. [535-536]

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on June 2, 1980. A complaint seeking division of marital property, filed on November 20, 1987, was heard by *Robert M. Ford*, J.

*Pamela Thomure & Bettina Borders* for Marilyn J. Crete.

DREBEN, J. The question before us is whether a probate judge erred in dismissing the wife's complaint for the division of a military pension where her divorce became final after the June 26, 1981 decision in *McCarty* v. *McCarty*, 453 U.S. 210, 223, but before the effective date, February 1, 1983, of the Uniformed Services Former Spouses' Protection Act (Act). Public Law 97-252, codified in 10 U.S.C. § 1408 (1988). *McCarty* precluded, because of Federal preemption,[1] the division as community property of military pay and, by implication, precluded equitable division of this asset. See *Marriage of Miller*, 187 Mont. 286 (1980), vac. sub nom. *Miller* v. *Miller*, 453 U.S. 918 (1981). While the wife is cor-

---

[1]The Act permits States to apply their own law in determining division.

rect that the Act permits "[f]ormer spouses divorced in the interim period between the *McCarty* decision and the effective date of [the Act to] have the opportunity to return to court to have their decrees modified in light of this legislation," S. Rep. No. 502, 97th Cong., 2d Sess. 5, reprinted in 1982 U.S. Code Cong. & Admin. News 1596, 1599-1600, such reopening requires a showing either that the earlier judgment was based on or influenced by *McCarty*,[2] see *Smith* v. *Smith*, 458 A.2d 711, 712 (Del. Fam. Ct. 1983); *Marriage of Waters*, 223 Mont. 183, 185, 188 (1986); *Castiglioni* v. *Castiglioni*, 192 N.J. Super. 594, 596 (1984); *Major* v. *Major*, 359 Pa. Super. 344, 353 (1986), or otherwise requires modification on equitable principles. *Marriage of Habermehl*, 135 Ill. App. 3d, 105, 112 (1985). *Keen* v. *Keen*, 145 Mich. App. 824, 829 (1985). *Harkins* v. *Harkins*, 101 N.M. 296, 297 (1984). *Tozer* v. *Tozer*, 121 Wis. 2d 187, 189 (Ct. App. 1984). We agree with the probate judge that the documents on file in this action indicate that no such showing could be made by the wife. Accordingly, the dismissal under Mass.R.Dom.Rel.P. 12(b)(6) (1975) was proper.[3]

On May 27, 1980, the parties entered into a separation agreement, the main provisions of which included a transfer of the residence to the wife (the only substantial asset of the parties other than the husband's pension) and payments to her of $500 a month as child support. The parties acknowledged that they had divided all their personal property, and each party waived any and all claims to alimony. The only

---

[2]Senate Rep. No. 502, 97th Cong., 2d Sess. 5 states:

"The provisions of S. 1814 reversing the effect of the *McCarty* decision are retroactive to June 26, 1981, the date on which the U.S. Supreme Court issued that decision. That is, the committee intends the legislation to restore the law to what it was when the courts were permitted to apply State divorce laws to military retired pay."

[3]Because all the documents considered by the probate judge were part of the record in this divorce proceeding, we do not view his dismissal under Mass.R.Dom.Rel.P. 12(b)(6) as contrary to those rules despite the omission therein of counterparts for Mass.R.Civ.P. 12(c) (judgment on the pleadings), 365 Mass. 756 (1974), and Mass.R.Civ.P. 56 (summary judgment), 365 Mass. 824-826 (1974). Cf. *Osserman* v. *Jacobs*, 369 Mass. 200, 201 n.3 (1975).

mention of the husband's military status in the agreement was a provision that coverage for medical expenses of the children "shall continue . . . as long as they are minors on his United States Air Force Champus insurance policy or plan." The financial statement of the husband dated June, 1980 indicated that the husband had become a full-time college student in January of 1980 and that he received a weekly retirement income from the United States Air Force ($163), as well as lesser amounts from veteran's education benefits ($73) and from self-employment ($60).

In approving the agreement on July 11, 1980, a judge of the Probate Court found "that the agreement makes proper provisions for custody, for support and maintenance, for alimony and for the disposition of marital property." A judgment of divorce nisi dated January 12, 1981, which became absolute on July 12, 1981, adjudicated the divorce for the cause of "irretrievable breakdown of the marriage under [G. L. c. 208, ]§ 1A," and further ordered that:

> "the agreement executed by the parties on May 27, 1980 and approved July 11, 1980 shall be made part of this judgment, shall be incorporated by reference, shall be binding upon the parties, and shall be enforceable between them in every respect."

*McCarty* was not decided until June 26, 1981, and was not even docketed in the Supreme Court until July 2, 1980.[4] It is, therefore, apparent that on May 27, 1980, when the agreement was signed, and on July 11, 1980, when it was approved, the *McCarty* decision was not a consideration of the parties or the judge. Contrast *Smith* v. *Smith*, 458 A. 2d at 712 (court's previous decision relied on *McCarty* in declining to allocate share of pension to wife); *Castiglioni* v. *Castiglioni*, 192 N.J. Super. at 596 ("settlement did not address the vested military pension because such an asset was excluded from the marital estate in March, 1982. *McCarty* v. *McCarty*"); *Major* v. *Major*, 359 Pa. Super. at 353 ("in-

---

[4] 49 U.S.L.W. 3014 (July 22, 1980).

tent" of Act "was to grant relief to those parties who mistakenly treated military pensions as separate property due to the *McCarty* decision").

On November 20, 1987, the wife filed two complaints, each seeking equitable division of the husband's pension. The first was a complaint for modification in which the wife alleged the following changes in circumstances:

> "1. The military pension of the Defendant has . . . been declared a marital asset. 2. The M.G.L. chapter 208, section 34 division between the parties has never taken place. 3. Plaintiff needs support from her former husband. 4. The economic disparity between the parties is growing and unequitable."

The second complaint sought a division of marital property, including the husband's military pension. It alleged that neither the January 12, 1981 judgment nor the separation agreement purported to divide the marital property and that the wife's income was "grossly insufficient to support herself."

For some reason, not disclosed by the record, the two complaints were acted upon by different probate judges. The judge disposing of the complaint for modification found that the wife, "with one less child to support, has adequate income, including the child support amount, to meet her expenses . . . . Neither party has shown any material and substantial change of circumstances . . . warranting a modification of the judgment of divorce." Judgment on the complaint for modification was entered on May 26, 1988, and no appeal was taken from that judgment.

The husband moved to dismiss the complaint for division (the second complaint filed on November 20, 1987), arguing that an equitable division had already taken place and that the military pension, although not valued, had been disclosed prior to the divorce. *Kirtz* v. *Kirtz*, 12 Mass. App. Ct. 141, 145 (1981). See *Hay* v. *Cloutier*, 389 Mass. 248, 252 (1983); *Maze* v. *Mihalovich*, 7 Mass. App. Ct. 323, 326 (1979); *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 367-368 (1985),

cases holding that a property division may only be ordered where a division has not been previously litigated. The husband's motion was allowed, and this appeal ensued.

The wife's basic argument, both to the probate judge and to this court, is that, at the time the divorce became absolute on July 12, 1981, the *McCarty* decision of June 26, 1981 (453 U.S. 210) prohibited State courts from considering military pensions as marital assets subject to equitable division, that Congress enacted remedial legislation (the Act), and that such legislation not only permits retroactive relief for divorces which became final during the period between the date of *McCarty* and the effective date of the Act, but also that such legislation requires findings based on criteria set forth in 10 U.S.C. § 1408 (c)(4) and (d)(2) (1988)[5] for determining whether direct payment of a portion of a military pension should be made to a spouse.

While we agree with the wife that the Act permits retroactive relief, her claim that the Act requires findings does not assist her. Certain jurisdictional facts must be found before direct payment can be ordered, but the Act in no way mandates such payment. Once the Federal requirements are met, the question whether payments are to be made is to be determined solely by State law. As we indicated earlier, the separation agreement and the order approving it preceded the decision in the Supreme Court by almost a year. The judgment nisi also preceded the decision by almost six months. Although the judgment of divorce absolute (which was automatically entered in the absence of an application within the nisi period) followed the *McCarty* decision by a few days, the record in these proceedings belies any reliance on *McCarty*

---

[5]Title 10 U.S.C. § 1408(d)(2) provides: "If the spouse or former spouse to whom payments are to be made under this section was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired or retainer pay, payments may not be made under this section to the extent that they include an amount resulting from the treatment by the court under subsection (c) of disposable retired or retainer pay of the member as property of the member or property of the member and his spouse."

The parties were married in 1958.

in the judgment absolute. Moreover, as the probate judge disposing of the complaint for division noted, the pension was made known to the parties and the probate judge and was obviously considered in arriving at the support order. While a military pension may be treated as a capital asset to be equitably divided, such treatment is not required. *Andrews* v. *Andrews*, 27 Mass. App. Ct. 759, 761 (1989). The parties' agreement which gave the wife the other major asset (the real estate) and used the stream of income of the pension to provide child support was approved by a probate judge. Another probate judge made findings that no material change in circumstances since the divorce had taken place. With the record in this posture, we conclude that the judge was warranted in dismissing the complaint for division on the husband's motion.

To summarize, we affirm the dismissal because: (1) the separation agreement and the judgment of divorce took the pension into account; (2) the financial arrangements incident to the divorce agreed to by the parties and approved by the judge were made without any reliance on *McCarty*; and (3) almost contemporaneously with the dismissal of the wife's complaint for division, a probate judge had made findings that no substantial change in circumstances had occurred since the divorce.

*Judgment affirmed.*